# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WILLIE SULLIVAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. |
| ) | 1:19-cv-00234-WS-M |
| WELLS FARGO BANK, N.A., ) | |
| ) | |
| Defendant. ) | |

## WELLS FARGO BANK, N.A.'S REPLY IN SUPPORT OF MOTION TO DISMISS AND RESPONSE IN OPPOSITION TO MOTION TO AMEND

COMES NOW defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by and through its undersigned counsel, and hereby files this Reply in support of its Motion to Dismiss the Complaint of plaintiff Willie Sullivan ("Plaintiff") and Response in opposition to Plaintiff's Motion to Amend, (Doc. 19), stating as follows:

### I. INTRODUCTION

In opposition to Wells Fargo's Motion to Dismiss, Plaintiff has both responded to the Motion to Dismiss, while simultaneously moving to amend the Complaint. Plaintiff's opposition brief improperly cites to both the original and the proposed Amended Complaint filed with his Motion to Amend, despite the fact that the original Complaint is the only operative complaint of record. Regardless, for the reasons discussed herein, Plaintiff's Complaint, even with its proposed amendments, still fails to state a claim upon which relief can be granted under either the Fair Credit

33969311 v1

Reporting Act ("FCRA") or for fraud. Accordingly, Plaintiff's Complaint should be dismissed. Additionally, because the proposed amendment does not cure the deficiencies of the original Complaint, the amendment is futile and the Motion to Amend should be denied.

## II. ARGUMENT

Leave to amend a complaint should be denied where the proposed amendment is futile. *Leach v. Wehling*, No. 18-00454, 2019 WL 15608041, at *1 (S.D. Ala. Apr. 5, 2019). An amendment is futile if the proposed amended complaint would not survive a motion to dismiss. *Id.* Plaintiff's proposed Amended Complaint fails to cure the deficiencies raised by Wells Fargo's Motion to Dismiss. Accordingly, the Motion to Dismiss should be granted, and the Motion to Amend should be denied.

### A. Plaintiff's FCRA Claim Is Due to be Dismissed.

#### 1. FCRA Does Not Cover Reports Pulled for Business Loans, Even If the Report Contains Consumer Credit Information.

Plaintiff fails to state a claim for which relief can be granted under the FCRA for the fundamental reason that the credit report at issue was pulled in connection with potential loans for Plaintiff's "investment properties" owned by Plaintiff as part of his "business." (Doc. 1 ¶¶ 3-4; *see also* Doc. 1, p. 1.) Therefore, the report is not a "consumer report" as defined by the FCRA, rendering the FCRA completely inapplicable. In response to this point, Plaintiff makes several arguments, none of which have merit.

First, to the extent Plaintiff argues that the credit report is a "consumer report" simply because it contained information about his personal credit history, as opposed to the credit history of a business of his, Plaintiff is wrong. "Where an individual's credit information is used to obtain credit for business purposes, as opposed to personal purposes, courts have determined that the credit report does not fall within the realm of the FCRA, which was implemented to protect consumers." *Stich v. BAC Home Loans Servicing, LP*, No. 10-CV-01106-CMA-MEH, 2011 WL 1135456, at *4 (D. Colo. Mar. 29, 2011). As the FTC has stated, "a report on a consumer for credit or insurance in connection with a business operated by the consumer is not a 'consumer report,' and the Act does not apply to it." *See Yeager v. TRW, Inc.*, 961 F. Supp. 161, 162-63 (E.D. Tex. 1997) (quoting 16 C.F.R., Part 600, App. § 603 cmt. 6(b)); *see also Lucchesi v. Experian Info. Sols., Inc.*, 226 F.R.D. 172, 174 (S.D.N.Y. 2005) (dismissing FCRA claim based on credit report issued in connection with consumer's business).

Plaintiff unsuccessfully attempts to distinguish *Stich* and *Lucchesi* by arguing that they involve "reports compiled on businesses, not individuals' credit reports." (Doc. 20 at 12.) This is not the case. In *Stich*, the court examined whether the plaintiff could recover losses to his business that stemmed from "negative information on Mr. Stich's credit report," not the business' credit report. *See* 2011 WL 1135456, at *4. The court concluded that such business losses were not recoverable under the FCRA,

even though the plaintiff's personal credit report had been used. *Id.* And in *Lucchesi*, while some of the reports at issue contained information solely on the plaintiff's business, the court concluded that even the reports on the plaintiff's personal credit history could not support a FCRA claim because, as is the case here, they were provided in connection with a proposal to guarantee financing for the plaintiff's business. *Lucchesi*, 226 F.R.D. at 175 ("The April 16, 2001 report cannot form the basis of liability under this statute for at least two reasons. First, it appears to have been a report about [Plaintiff's business]—not the Plaintiff. But even assuming that it, like the April 5 report, was a report about the Plaintiff, it too was issued in connection with a business operated by the consumer, and thus cannot form the basis of liability under the FCRA."). Because Plaintiff expressly alleges that the reports at issue were obtained in connection with "rental properties" for "his business," they cannot support a FCRA claim. (Doc. 1 ¶¶ 3-4; Doc. 19-1 ¶¶ 3-4.)

Plaintiff also mischaracterizes *Yeager* when he states that that case "did not address the issue [of a consumer report] in any detail because the plaintiff failed to submit materials in response to the summary judgment motion." (Doc. 20 at 12.) *Yeager* did not involve an uncontested summary judgment motion, as Plaintiff suggests. Rather, the plaintiff failed to submit evidence to dispute that the credit report was issued "in response to an application for commercial credit." 961 F. Supp.

at 163. The plaintiff did nonetheless argue that "a non-consumer transaction could fall within FCRA's protection," which the court rejected on the facts of that case. *Id.*

In opposition to dismissal, Plaintiff also relies on allegations in the proposed Amended Complaint that Transunion issued the credit report in order to establish that the report is a "consumer report." (Doc. 20 at 8.) However, this is not so. "A report will not be covered by the Act solely because it contains the type of information generally found in consumer reports." *Adams v. LexisNexis Risk & Information Analytics Group, Inc.*, No. 08-4708, 2010 WL 1931135 (D.N.J. May 12, 2010).

Plaintiff's reliance on *Yang v. Government Employees Ins. Co.*, 146 F.3d 1320, 1325 (11th Cir. 1998) is unhelpful. In that case, decided at summary judgment, there was evidence that the reports at issue were "compiled . . . for credit-related purposes and expected . . . to be used for such purposes." *See id.* Here, no such facts regarding compilation of the report or expected use of the report appear in the original Complaint, and only conclusory allegations appear on these points in the proposed Amended Complaint. (Doc. 19-1 ¶ 7.) In fact, in either the original or proposed Amended Complaint, Plaintiff "asserts no facts at all about what was in the document [Transunion] allegedly provided to [Wells Fargo] from which this Court could infer that the item to which [Plaintiff] refers as a 'consumer report' was in fact a 'consumer report' under the FCRA's definition of that term." *Wyche v.*

*Kuchinsky*, No. 3:16-cv-114, 2017 WL 2222376 (E.D. Va. May 19, 2017). Moreover, *Yang* did not address the factual context presented here: a credit report which, by Plaintiff's own allegations, was obtained in connection with securing financing for a consumer's business. (Doc. 1 ¶¶ 3-4; Doc. 19-1 ¶¶ 3-4.)

Under Plaintiff's theory, any report issued by one of the major credit bureaus would be a "consumer report" under the FCRA, regardless of the purpose for which the report was obtained. Such an overly expansive view of the FCRA contradicts the FTC's own express guidance that "a report on a consumer for credit or insurance in connection with a business operated by the consumer is not a 'consumer report'." *See* FTC Commentary on the Fair Credit Reporting Act, 55 FR 18804-01, 1990 WL 342991 (May 4, 1990); *see also* 16 C.F.R., Part 600, App. § 603 cmt. 6(b) (July 25, 2011). Because Plaintiff alleges that the credit report at issue was obtained for purposes of evaluating credit in relation to Plaintiff's business, it falls outside the plain scope of FCRA. Accordingly, Plaintiff's FCRA claim must be dismissed, and the proposed amendment should be denied as futile.

### 2. Plaintiff Has Not Alleged Willfulness.

Plaintiff's claim for a willful violation of the FCRA must also be dismissed because Plaintiff fails to allege facts to plausibly allege that Wells Fargo willfully violated the statute. Plaintiff attempts to respond to this argument by stating that the willfulness of Wells Fargo's alleged conduct is established by its conduct ***after*** the

credit report was allegedly pulled. (Doc. 20 at 13) (noting that Wells Fargo allegedly "refused to acknowledge that it improperly pulled Plaintiff's credit report"). However, whether or not Wells Fargo willfully pulled Plaintiff's credit must be established by facts surrounding the actual alleged credit pull, not Wells Fargo's subsequent actions. And the alleged facts regarding the alleged credit pull demonstrate that the report was pulled as the result of a mere "mistake." (Doc. 1 ¶¶ 10, 13; Doc. 19-1 ¶ 12.) Plaintiff has not alleged facts in either the original or the proposed Amended Complaint to show that Wells Fargo "knowingly or recklessly" violated the FCRA, as is required to state a claim for a willful violation. *See Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009).

Plaintiff also attempts to establish willfulness by citing cases that discuss pulling a credit report without a permissible purpose. However, whether or not Wells Fargo had a permissible purpose is separate and distinct from whether it acted willfully. None of the cases relied on by Plaintiff even discuss the sufficiency of a complaint's allegations as to willfulness.[1] In fact, the court in *Qureshi v. Penkhus*

---

[1] *See* Doc. 20 at 13-14 (citing *Levine*, 554 F.3d at 1318) (at summary judgment, discussing whether the defendant's interpretation of the law was objectively unreasonable so as to support a finding of willfulness); *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007) (discussing standard for willfulness in context of adverse action notices under the FCRA); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (affirming summary judgment in favor of defendants on FCRA claim and not addressing willfulness standard); *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197 (C.D. Cal. Nov. 5, 2007) (finding genuine issue of fact as to whether the defendant acted willfully in violating the Fair and Accurate Credit Transactions Act by altering the display on its register receipts); *Miller v. Dish Network, LLC*, 326 F. Supp. 3d 51 (E.D. Va. 2018) (discussing whether the defendant had a permissible purpose to obtain credit report;

*Motor Co.*, No. 15-cv-2337, 2016 WL 5372184 (D. Colo. Sept. 26, 2016), cited by Plaintiff, (Doc. 20 at 15), expressly declined to find that the evidence supported a willful violation. Without any authority to support his position, Plaintiff's claim for a willful violation of the FCRA must be dismissed, and leave to amend should be denied.

### 3. Plaintiff Cannot State Causes of Action Under 15 U.S.C. § 1681n(b) or § 1681q.

Plaintiff's response to Wells Fargo's Motion to Dismiss fails to save either his § 1681n(b) or § 1681q claims from dismissal. In response to Wells Fargo's argument that any claim for obtaining a credit report under false pretenses in violation of § 1681n(b) is subsumed within Plaintiff's claim for obtaining a credit report without a permissible purpose under § 1681b(f)(1),[2] Plaintiff makes no attempt to address the holding of this Court cited in Wells Fargo's Motion to Dismiss that such claims are "intertwined as a single claim for relief under the statutory scheme" of the FCRA.

---

willfulness not mentioned); *Boone v. T-Mobile USA Inc.*, No. 17-378, 2018 WL 588927 (D.N.J. Jan. 29, 2018) (discussing whether the defendant had a permissible purpose to obtain credit report and not addressing willfulness); *Heaton v. Social Fin., Inc.*, No. 14–cv–05191, 2015 WL 6744525 (N.D. Cal. Nov. 4, 2015) (finding a question of fact as to whether the defendant willfully accessed the plaintiffs' credit without the plaintiffs' consent after the plaintiffs filled out a loan application); *Traveler v. Glenn Jones Ford Lincoln Mercury 1987*, No. CV–05–0817, 2007 WL 173687 (D. Ariz. Jan. 24, 2006) (discussing whether the defendant had a permissible purpose to obtain credit report and not addressing willfulness); *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999) (remanded for factfinding as to willfulness).

[2] Neither Plaintiff's original Complaint nor the proposed Amended Complaint cites the correct permissible purpose provision, 15 U.S.C. § 1681b(f)(1). Instead, they cite § 1681(f)(1), which does not exist. (Doc. 1, ¶ 22(a); Doc. 19-1, ¶ 25(a).)

*See Shepherd-Salgado v. Tyndall Fed. Credit Union*, No. CIV.A. 11-0427-WS-B, 2011 WL 5401993, at *3 (S.D. Ala. Nov. 7, 2011). Plaintiff also ignores the plain text of the statute that a claim under § 1681n(b) can only result in liability "to the consumer reporting agency." As such, any claim under § 1681n(b) does not provide Plaintiff independent relief from § 1681b(f)(1), and, therefore, must be dismissed.[3]

Plaintiff also makes no attempt to respond to Wells Fargo's argument that he cannot assert a claim under 15 U.S.C. § 1681q, which provides a criminal penalty for obtaining information on a consumer under false pretenses. Accordingly, both because Plaintiff has effectively abandoned this claim, and because a criminal remedy cannot be obtained by a civil plaintiff, Plaintiff's § 1681q claim must be dismissed.[4] *See Shepherd-Salgado*, 2011 WL 5401993, at *3, n.4 (citations omitted). Because the proposed Amended Complaint continues to assert claims under §§ 1681n(b) and 1681q, and these claims are not viable for the reasons discussed herein, leave to amend should be denied.

---

[3] Neither *Phillips v. Grendahl*, 312 F.3d 357 (8th Cir. 2002), nor *Godby v. Wells Fargo Bank, N.A.*, 599 F. Supp. 2d 934 (S.D. Ohio Sept. 30, 2008), cited by Plaintiff, (Doc. 20 at 16), even mention § 1681n(b). This leaves Plaintiff with *Pettus v. Servicing Company, LLC*, 2015 WL 92553331, at *2 (E.D. Va. Dec. 17, 2015), a lone out-of-circuit, nonbinding district court case that does not control.

[4] Indeed, even *Phillips* and *Godby*, both relied on by Plaintiff, (Doc. 20 at 16), acknowledge that reliance on § 1681q, "a criminal liability statute," is "unnecessary" in civil cases. *See Phillips*, 312 F.3d at 364; *Godby*, 599 F. Supp. 2d at 937.

### B.     Plaintiff's Fraud Claim Is Due to be Dismissed.

Plaintiff's fraud claim is a promissory fraud claim requiring that Plaintiff establish that the speaker lacked the intent to fulfill the promise that Wells Fargo would provide a loan estimate without conducting a credit pull at the time it was made. In response to Wells Fargo's argument that Plaintiff's fraud claim is based on a future event, Plaintiff now for the first time argues that the alleged misrepresentation concerned Wells Fargo's policies, not its future conduct. (Doc. 20 at 18.) However, the allegations of both the original Complaint and the proposed Amended Complaint negate this theory.

Under the Fraud count, both the original and the proposed Amended Complaint plainly allege that "Wells Fargo falsely represented to Plaintiff *that it would provide estimated loan terms* needed for Plaintiff to compare those to his existing loans *with no credit pull* and that his credit report would be pulled only upon his express written authorization." (Doc. 1 ¶ 26; Doc. 19-1 ¶ 26) (emphasis added). The original and the proposed Amended Complaint then immediately say, "*These representations* were made . . . by Mr. Bolton" and "[i]n reliance on *those representations*, Plaintiff agreed to provide the requested financial information." (Doc. 1 ¶ 26; Doc. 19-1 ¶ 26) (emphasis added). Both complaints are clear that the representations at issue concern Wells Fargo's future conduct, and specifically, its alleged promise to provide a loan estimate without pulling Plaintiff's credit. As such,

the Complaint must allege more than recklessness or negligence, which neither the original or proposed complaint do. (Doc. 1 ¶ 27; Doc. 19-1 ¶ 27.) *See Madison County v. Evanston Ins. Co.*, 340 F. Supp. 3d 1232, 1284 (N.D. Ala. 2018) ("[M]isrepresentations made recklessly or innocently cannot sustain an action for promissory fraud") (citations omitted); *Ex parte Moulton*, 116 So. 3d 1119, 1144 (Ala. 2013) ("[a] reckless misrepresentation cannot constitute fraud where the alleged misrepresentation relates to some future event"). Because Plaintiff has failed to cure this deficiency in his proposed Amended Complaint even after Wells Fargo raised it in its Motion to Dismiss, the fraud claim must be dismissed with prejudice, without leave to amend.

Plaintiff's attempt in the proposed Amended Complaint to recast the alleged misrepresentations as concerning Wells Fargo's current procedures is untenable. Indeed, Plaintiff did not provide the branch manager his information in response to (and in reliance on) hearing the bank's procedures regarding pulling credit reports, but rather, in reliance on the manager's promise of providing a loan estimate without a credit pull. *See Pinyan v. Cmty. Bank*, 644 So. 2d 919, 924 (Ala. 1994) ("Clearly, it was the Bank's promise to permit the plaintiffs to purchase the property that caused the plaintiffs to work on the property, not the nature of the internal operations of the Bank . . . Therefore, the material fact that was represented (the right to purchase the property) related to a future event."). Plaintiff's new allegation in the proposed

Amended Complaint that he relied on Mr. Bolton's "representation as to Wells Fargo's procedures," (Doc. 19-1 ¶ 6), should be read in the context of the allegations under the fraud count itself, where Plaintiff clearly alleges that he provided his information in response to Mr. Bolton's promise of providing a loan estimate, not in response to any discussion regarding Wells Fargo's procedures. (*Id.* ¶¶ 26-27.)

The cases relied on by Plaintiff as purportedly supporting his position that fraud claims based on future conduct do not always require evidence of an intent not to carry out the promise are not on point. (Doc. 20 at 17-18.) For example, in *Walker v. Woodall*, the court found that it was not error to fail to instruct the jury that the defendant lacked the intent to perform the promise because "there was sufficient evidence introduced upon which the jury could infer the requisite intent." 262 So. 2d 756, 759 (Ala. 1972). Therefore, the issue of the proper instruction was immaterial. The same was true in *Spring Hill Lighting & Supply Co., Inc. v. Square D Co., Inc.*, and *Standard Furniture Mfg. Co. v. Reed*. See *Spring Hill Lighting & Supply Co., Inc.*, 662 So. 2d 1141, 1149 (Ala. 1995) (noting that "there is substantial evidence that the defendants had no intention to [consider alternative submissions] at the time the invitation to bid was issued"); *Reed*, 572 So. 2d 389, 392 (Ala. 1990) (summarizing evidence from which the jury could infer that the defendant had no intention of performing).

In *International Resorts, Inc. v. Lambert*, the Court did not even mention promissory fraud. *Lambert* did not involve an unfulfilled promise (as this case allegedly does), and instead involved representations about the current state of property that the plaintiffs purchased and later found out to be untrue. *See* 350 So. 2d 391 (Ala. 1977). And in *Alabama River Group, Inc. v. Conecuh Timber, Inc.*, the Court denied the reversal on the fraud claim because there was evidence of misrepresentations of present facts, which the court found sufficient to support the verdict against the defendants, regardless of whether there also were representations that could have supported a promissory fraud claim. 261 So. 3d 226, 247 (Ala. 2017) (declining to consider whether evidence supported promissory fraud claim). Therefore, Plaintiff has failed to provide any authority on point to support his position that his fraud claim is not a promissory fraud claim or that the claim can survive dismissal by alleging a reckless or negligent intent. Accordingly, Plaintiff's fraud claim must be dismissed and leave to amend should be denied.

Finally, Plaintiff is unable to cure his fraud claim's Rule 9(b) deficiency for failure to allege what Wells Fargo obtained as a result of the fraud. *See Kelley v. NOVAD Mgmt. Consulting*, No. 2:17-CV-0981-VEH, 2018 WL 1089754, at *3 (N.D. Ala. Feb. 28, 2018). Plaintiff attempts to remedy this issue by stating that "Plaintiff agreed to move forward with the terms shopping process and agreed to provide Wells Fargo with his tax returns, credit score and other personal

information." (Doc. 20 at 19-20). This still fails to allege what Wells Fargo actually obtained, as it is clear that Plaintiff chose not to move forward with the loan. *See Kelley*, 2018 WL 1089754, at *3 (plaintiffs' claim that the defendant defrauded them by falsely stating that their reverse mortgage had become due and payable failed to comply with Rule 9(b) for failure to allege what the defendant obtained, where the plaintiff never paid the amount due and did not hand over the deed to their home). Accordingly, Plaintiff's fraud claim is due to be dismissed for this additional reason.

### III. CONCLUSION

For the reasons discussed herein and in Wells Fargo's Motion to Dismiss, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted, either under the FCRA or as a fraud claim. Additionally, because Plaintiff's claims still fail even as alleged in the proposed Amended Complaint, Plaintiff should not be granted leave to amend on grounds of futility, and this case should be dismissed in its entirety with prejudice.

Respectfully submitted,

*/s/ Rachel R. Friedman*
Reid S. Manley (MAN039)
Rachel Friedman (FRI045)

Attorneys for Defendant
WELLS FARGO BANK, N.A.

**OF COUNSEL:**
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rmanley@burr.com
rfriedman@burr.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on the following by through CM/ECF Notice of Electronic Filing, on this the 29th day of July, 2019:

Kenneth J. Riemer
Underwood & Riemer, P.C.
166 Government St., Suite 100
Mobile, AL 36602
Phone: (251) 432-9212
kriemer01@gmail.com

Earl P. Underwood , Jr.
Underwood & Riemer, PC
21 South Section Street
Fairhope, AL 36532
Phone: 251-990-5558
epunderwood@gmail.com

/s/ Rachel R. Friedman
OF COUNSEL