**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **WILLIE SULLIVAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 19-0234-WS-M |
| | ) |
| **WELLS FARGO BANK, N.A.,** | ) |
| | )    <u>**PUBLISH**</u> |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on the defendant's motion to dismiss. (Doc. 10). The plaintiff filed a response, (Doc. 20), along with a motion to amend the complaint. (Doc. 19). The defendant filed a reply, which addressed the proposed amended complaint but also opposed amendment on the grounds of futility. (Doc. 24). Because ruling on the defendant's futility argument would have required resolution of the underlying motion to dismiss, the Court granted leave to amend and allowed the plaintiff to file a sur-reply brief, limited to new or altered material in the amended complaint. (Doc. 25). The plaintiff did so, (Doc. 27), and the motion to dismiss is now ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

According to the amended complaint, (Doc. 26), the plaintiff visited a local Wells Fargo branch to open a personal money market account, where the branch manager ("Bolton") aggressively tried to persuade the plaintiff to take out a mortgage loan on his rental properties. The plaintiff told Bolton that, before deciding whether to seek loan options from the defendant, he would first have to consider the estimated general terms the defendant might offer – but only if those estimated terms could be provided without

pulling his credit. Bolton assured the plaintiff that the defendant could provide estimated terms without pulling his credit and that, pursuant to the defendant's policy and procedures, no credit report would be pulled until and unless the plaintiff (1) elected to complete a loan application and (2) signed a written authorization for a credit pull.

Based on these assurances, the plaintiff provided the financial information requested by Bolton (his most recent personal federal income tax returns, certain information regarding the rental property and rental income, and an estimated credit score). Rather than provide estimated terms, the defendant pulled the plaintiff's credit report from TransUnion, a consumer reporting agency ("CRA"), and processed and mailed the plaintiff two signature-ready loan packages.

The plaintiff promptly sought to have the unauthorized credit pull rectified, but the defendant repeatedly refused to do so, on the grounds that the plaintiff's provision of his social security number (in connection with opening his money market account and/or on his income tax returns) authorized the defendant to pull his credit report.

Count One alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq*. In particular, it alleges violations of Sections 1681b(f)(1),[1] 1681n(b), 1681q and 1681g(g), and it invokes the civil remedies provided for willful and negligent noncompliance with FCRA's requirements under Sections 1681n and 1681*o*, respectively. Count Two alleges fraudulent misrepresentation. The defendant seeks dismissal of all claims.

## DISCUSSION

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that states a claim for relief must contain … a short and plain

---

[1] The amended complaint identifies the code section as 1681(f)(1), (Doc. 26 at 8), which does not exist. Because the amended complaint identifies the statutory violation as "obtaining and using Plaintiff's consumer report without a permissible purpose," (*id.*), the Court understands the reference as one to Section 1681b(f)(1), which addresses that situation. The defendant shares this understanding. (Doc. 24 at 8 n.2).

statement of the claim showing that the pleader is entitled to relief ….”  Fed. R. Civ. P. 8(a)(2).  Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2).  The rule “requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not” satisfy that rule.  *Twombly*, 550 U.S. at 555.  There must in addition be a pleading of facts.  Though they need not be detailed, “[f]actual allegations must be enough to raise a right to relief above the speculative level ….”  *Id*.  That is, the complaint must allege “enough facts to state a claim for relief that is plausible on its face.”  *Id*. at 570.  “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.”  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  “The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully,” and “[w]here a complaint pleads facts that are merely consistent with a defendant’s liability, it stops short of the line between possibility and plausibility of entitlement to relief.”  *Id*. (internal quotes omitted).  A complaint lacking “sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face” will not “survive a motion to dismiss.”  *Id*.  But so long as the plausibility standard is met, the complaint “may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.”  *Twombly*, 550 U.S. at 556 (internal quotes omitted).

## I.  FCRA.

In opposition to the plaintiff’s FCRA claim, the defendant argues:  (1) the pulled credit report does not constitute a “consumer report”; (2) FCRA liability cannot rest on the pulling of a consumer report for the purpose of extending credit to the consumer’s business; (3) the amended complaint fails adequately to allege willfulness; and (4) Sections 1681q and 1681n(b) provide the plaintiff no cause of action.  (Doc. 10 at 7-14).

## A. Consumer Report.

"A person shall not use or obtain a consumer report for any purpose unless … the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section …." 15 U.S.C. § 1681b(f)(1). The parties agree that FCRA regulates "consumer reports" and "investigative consumer reports" and that "[r]eports that do not fall within either of these definitional categories are outside the coverage of the Act." *Hovater v. Equifax, Inc.*, 823 F.2d 413, 417 (11th Cir. 1987).

To be a "consumer report," the communication must include information about certain aspects of a "consumer" and must be made by a "consumer reporting agency." 15 U.S.C. § 1681a(d)(1). For purposes of this motion, the defendant does not seriously dispute that the plaintiff is a consumer,[2] that TransUnion is a CRA, and that the information TransUnion released bears on relevant aspects of the plaintiff.

To be a "consumer report," the communication also must be of information "which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for … (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d)(1). The Eleventh Circuit in *Yang v. Government Employees Insurance Co.*, 146 F.3d 1320 (11th Cir. 1998), referred to this as "the Purpose clause." *Id*. at 1324. The defendant, without acknowledging *Yang*, argues the amended complaint fails to satisfy the Purpose clause because it does not allege that the defendant pulled the plaintiff's credit for a statutorily listed purpose. (Doc. 10 at 8).

As here, the defendant in *Yang* argued the information it received from a CRA was not a "consumer report" because the purpose for which the defendant received it (investigation of an insurance claim) was not a purpose listed in Section 1681a(d)(1).

---

[2] The defendant objects that the amended complaint's identification of the plaintiff as a "consumer" is a mere conclusion inadequate under *Twombly*. (Doc. 10 at 8 n.2). FCRA, however, defines "consumer" as "an individual," 15 U.S.C. § 1681a(c), which the plaintiff clearly is.

The *Yang* panel noted that communicated information is a "consumer report" if it is "used *or* expected to be used *or* collected" for a specified purpose. 146 F.3d at 1324 (emphasis added). Because the disjunctive "or" joins the quoted verbs, "[u]nder the plain language of the FCRA, a 'communication of information' is a 'consumer report' if *any one of the three components* in the Purpose clause is met." *Id*. at 1324-25 (emphasis in original).

Within the Purpose clause, "used" corresponds to "ultimate use" by the recipient; this is the only verb relied on by the defendant here and in *Yang*. 146 F.3d at 1324. The other quoted verbs address the perspective of the communicator – specifically, whether the CRA collected the communicated information for a statutorily specified purpose (its "reason for compilation") and whether the CRA expected the communicated information to be used for a statutorily specified purpose (its "expectation of use"). *Id*. Because the CRA in *Yang* "compiled it for credit-related purposes and expected it to be used for such purposes," the information communicated to the defendant "is a protected 'consumer report.'" *Id*. at 1325.

As in *Yang*, so here. Regardless of the purpose for which the defendant obtained the plaintiff's credit report, it satisfies the Purpose clause and is thus a "consumer report" if TransUnion either collected the communicated information for a statutory purpose or expected the information to be used for a statutory purpose. That is precisely what the amended complaint alleges. (Doc. 26 at 4).

The defendant characterizes the amended complaint's allegations in this regard as "only conclusory." (Doc. 24 at 5). Absent a heightened pleading requirement – and the defendant suggests none – a complaint's allegations need only be plausible, not detailed. There is nothing obviously implausible about a big three credit bureau[3] collecting the information in its reports on individuals, in whole or in part, for the purpose of serving as a factor in establishing the individual's eligibility for credit or insurance to be used primarily for personal, family, or household purposes (or for some other statutory purpose). *See Hansen v. Morgan*, 582 F.2d 1214, 1218 (9th Cir. 1978) ("[U]nless the

---

[3] (Doc. 26 at 4).

[CRA] was generally collecting such information for purposes not permitted by the FCRA, it must have collected the information in the report [at issue] for use consistent with the purposes stated in the act."). The defendant stresses that the plaintiff in *Yang* produced evidence of the purposes for which the CRA collected the information and for which it was expected to be used, (Doc. 24 at 5), but *Yang* was decided on motion for summary judgment and thus says nothing about the pleading threshold to survive a motion to dismiss.

The defendant insists that *Yang*'s disjunctive construction of the Purpose clause does not apply when the recipient uses the information it receives to evaluate a consumer for a loan in connection with the consumer's business; in that situation, the defendant argues, only the recipient's intended use matters, to the exclusion of the CRA's purpose in collecting the information and its expectation as to how the information would be used. Because the amended complaint alleges that the defendant pulled the plaintiff's credit in an effort to upsell the plaintiff a mortgage loan on his investment rental properties, the defendant concludes that the complaint negates the existence of a "consumer report." (Doc. 10 at 7-9; Doc. 24 at 2-3, 6).

According to an early statement from the Federal Trade Commission ("FTC"), "[a] report on a consumer for credit or insurance in connection with a business operated by the consumer is not a consumer report and the Act does not apply to it." Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18,804-01, 18,811 (May 4, 1990) ("1990 Commentary"). Again, "[r]eports used to determine the eligibility of a business, rather than a consumer, for certain purposes, are not consumer reports and the FCRA does not apply to them, even if they contain information on individuals, because Congress did not intend for the FCRA to apply to reports used for commercial purposes …." *Id*. at 18,810. A number of sister courts have relied on the FTC's statement,[4] as does the defendant.

---

[4] *E.g., Grigoryan v. Experian Information Solutions, Inc*., 84 F. Supp. 3d 1044, 1081 (C.D. Cal. 2014); *Yeager v. TRW, Inc*., 961 F. Supp. 161, 162 (E.D. Tex. 1997); *Bacharach v. Suntrust Mortgage, Inc*., 2015 WL 6442493 at *4 (E.D. La. 2015); *Wisdom v. Wells Fargo Bank*,

The FTC in its 1990 Commentary did not parse the language of Section 1681a(d)(1) to support its conclusion; instead, it cited generally to a single page of the Congressional Record, which contains statements on the floor from Representative Sullivan, one of the bill's co-sponsors. The agency did not identify the language on which it relied, but it appears to be the following:

> I think we always made clear that we were not interested in extending this law to credit reports for business credit or business insurance. The conference bill spells this out, furthermore in section 603(d), which defines a "consumer report" as a report, and so on, "which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes" and so forth.

*Fernandez v. Retail Credit Co.*, 349 F. Supp. 652, 654 (E.D. La. 1972) (quoting Representative Sullivan's floor comments). While there may be good policy reasons to limit FCRA's scope, neither Representative Sullivan nor the FTC explained how the Purpose clause could be read to exclude a report from the definition of a "consumer report" based solely on the fact the recipient used the report in connection with a business loan or business insurance.

On the contrary, such a reading flies in the face of the disjunctive phrase, "used *or* expected to be used *or* collected," effectively redacting that phrase to read simply, "used." Under *Yang*, such a reading is impermissible, as "the plain language" of the Purpose clause compels the conclusion that a communication of information is a statutory consumer report "if *any one of the three components* in the Purpose clause is met." 146 F.3d at 1324 (emphasis in original). Other appellate courts agree that the statutory language is too clear to leave room for a more restrictive construction.[5]

---

2012 WL 170900 at *2 (D. Ariz. 2012); *Natale v. TRW, Inc.*, 1999 WL 179678 at *3 (N.D. Cal. 1999).

[5] *E.g., Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1273-74 (9th Cir. 1990) (the "plain language" of the definitional provision requires looking beyond the ultimate purpose to which the report is put); *St. Paul Guardian Insurance Co. v. Johnson*, 884 F.2d 881, 884 (5th Cir. 1989) (under a "plain reading" of Section 1681a(d), a report is a consumer report if

"Legislative history is not the law," and "once [Congress] enacts a statute we do not inquire what the legislature meant; we ask only what the statute means." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018) (internal quotes omitted). "When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n.29 (1978); *see also United States v. Woods*, 571 U.S. 31, 46 n.5 (2013) ("Whether or not legislative history is ever relevant, it need not be consulted when, as here, the statutory text is unambiguous."). *Yang* and many other courts have recognized that the language of Section 1681a(d)(1) is unambiguous, which obviates any resort to the slim legislative history invoked here.

Even were Representative Sullivan's comments to be considered, they could not introduce ambiguity into the clear language of Section 1681a(d)(1). Even at their most compelling, "floor statements by individual legislators rank among the least illuminating forms of legislative history." *National Labor Relations Board v. SW General, Inc*., 137 S. Ct. 929, 943 (2017). Consequently, when "the text of the statute [is] unambiguous on the point at issue …, we give no weight to a single reference by a single Senator during floor debate in the Senate." *Bath Iron Works Corp. v. Director, Office of Workers' Compensation Programs*, 506 U.S. 153, 166 (1993).

Representative Sullivan identified no basis for reading the "used or expected to be used or collected" language other than as *Yang* and other courts routinely have done. It is clear from her statement that she understood the exclusion from the definition of "consumer report" of reports for business credit or insurance to flow from the list of purposes in subsections (A) – (C) of Section 1681a(d)(1), and she did not address how

---

the CRA collected the information for statutory purposes, regardless of how the recipient used it); *Ippolito v. WNS, Inc*., 864 F.2d 440, 449, 453 & 449 n.10 (7th Cir. 1988) (the "plain language" of the disjunctive phrase requires inquiry into why the information was collected and how it was expected to be used); *Heath v. Credit Bureau of Sheridan, Inc*., 618 F.2d 693, 696 (10th Cir. 1980) (the disjunctive phrase "clearly requires" inquiry into the CRA's purpose in collecting the information and its expectation as to use); *see also Bakker v. McKinnon*, 152 F.3d 1007, 1012 (8th Cir. 2002) (adopting the same disjunctive construction).

"or expected to be used or collected" could be read out of the statute, either in general or when business credit or insurance is involved. Without such an explanation, her statement may or may not reflect on "what the legislature meant," but it plainly does not reflect on "what the statute means." *Epic Systems*, 138 S. Ct. at 1631.

The 1990 Commentary, which rests exclusively on Representative Sullivan's comments, stands on no firmer ground. "[A] court must give effect to an agency's regulation containing a reasonable interpretation of an ambiguous statute." *Christensen v. Harris County*, 529 U.S. 576, 586-87 (2000). For reasons stated above, Section 1681a(d)(1) is not ambiguous in this regard, and the FTC's interpretation is not reasonable. Moreover, the FTC's statement is contained in a policy statement, not a regulation. "[I]nterpretations contained in policy statements … do not warrant *Chevron*-style deference" and "are entitled to respect … only to the extent that those interpretations have the power to persuade …." *Id.* (internal quotes omitted). For reasons stated above, the Court is unpersuaded by the FTC's unreasoned pronouncement.

As is, apparently, the FTC itself. In 2012, the FTC issued a document in which it "withdr[ew] its 1990 Commentary" and offered fresh interpretations. Staff Report with Summary of Interpretations, 2012 WL 5879749 at *7 (Nov. 19, 2012) ("Staff Summary"). "[T]he interpretations in the Staff Summary differ from the 1990 Commentary in five significant areas," one of which concerns "commercial transactions." *Id.* at *7-8. The Staff Summary "adopts" the view that, "when a creditor that is considering a credit application from a small business wants to procure a credit report on the sole proprietor or other principal in the business, … a report by a CRA is a 'consumer report' even if it is used for commercial purposes …." *Id.* at *8. Similarly, "a report from a CRA on the personal credit of a consumer to a business credit grantor is a 'consumer report' regardless of the purpose for which the information may in fact be used," and "[r]eports obtained from CRA's on consumers retain their character as 'consumer reports' even if they are subsequently furnished in connection with a commercial credit or insurance transaction." *Id.* at *16. The FTC's most recent view on

the subject directly contradicts the defendant's position – which rests on an FTC interpretation the agency itself has repudiated.

Even if the defendant's construction of "consumer report" had merit in the abstract, the Court would be bound by *Yang*'s opposite construction. The defendant suggests that *Yang* governs the meaning of Section 1681a(d)(1) only when the recipient has not used information from the CRA in connection with credit or insurance for a consumer's business. (Doc. 24 at 6). *Yang* expressed no such limitation on its holding, and the defendant does not explain how it is possible for the disjunctive nature of "used or expected to be used or collected" to magically vanish in such a situation.

The defendant worries that, under *Yang*'s "overly expansive" construction of Section 1681a(d)(1), "any report" issued by a major credit bureau will automatically be a "consumer report." (Doc. 24 at 6). This is perhaps an exaggeration, as one can envision occasions when a CRA will collect and share information in response to a request known to be for a non-statutory purpose. In any event, a "consumer report" is necessary for FCRA liability but is not alone sufficient. To the extent the defendant nevertheless believes the definition of "consumer report" stretches too far, its recourse is to seek an overruling of *Yang* or amendment of FCRA, as the Court has no authority to alter existing law.

**B. Business Credit.**

Entangled with the defendant's argument that it did not pull a "consumer report" is the argument that "FCRA does not apply to credit reports pulled for business or commercial purposes." (Doc. 10 at 7). The Court understands the defendant to assert that, even if the report it received is a "consumer report," the defendant has a blanket exclusion from liability because it obtained the report to evaluate the plaintiff for a loan to his business.

The Court has reviewed the three opinions on which the defendant relies, and a number of others besides. Many of these cases expressly frame the issue as whether a report requested for a business reason can be a "consumer report" as defined by Section

1681d(a)(1).[6]  Others do not clearly frame the issue but rely on cases addressing the scope of a "consumer report."[7]  All such decisions are captured by the analysis in Part I.A.

This catalogue appears to cover the waterfront.  The vagueness of many opinions, however, leaves open the possibility that some of them base this blanket exclusion on the perceived or assumed will of Congress, untethered to any particular statutory provision.  As previously noted, however, "once [Congress] enacts a statute we do not inquire what the legislature meant; we ask only what the statute means."  *Epic Systems*, 138 S. Ct. at 1631.  To the extent these cases rely on general statements from Representative Sullivan, or equally general statements from the 1990 Commentary, they are no more compelling than with respect to the proper construction of the statutory definition of a "consumer report."

Nor has the defendant come to grips with cases such as *Ippolito v. WNS, Inc*., 864 F.2d 440 (7th Cir. 1988), which expressly contemplate potential FCRA liability in the context of consumer reports obtained for business rather than consumer purposes.  *Id*. at 449, 453.  The FTC, moreover, has plainly stated that a requester can be liable for obtaining a consumer report in connection with a transaction regarding the consumer's business:

> A lender has a permissible purpose to obtain a consumer report
> on a consumer in connection with a business credit transaction
> when the consumer is or will be personally liable on the loan as
> a co-signer or guarantor ….  A lender would not have a permissible
> purpose to obtain a consumer report on a consumer who will not
> be personally liable for repayment of the credit (even an individual
> proprietor, shareholder, director, or officer of a corporation), because

---

[6] *E.g., Lucchesi v. Experian Information Solutions, Inc.*, 226 F.R.D. 172, 174 (S.D.N.Y. 2005); *Boothe v. TRW Credit Data*, 523 F. Supp. 631, 633 (S.D.N.Y. 1981); *Sizemore v. Bambi Leasing Corp*., 360 F. Supp. 252, 253-54 (N.D. Ga. 1973); *Cook v. Equifax Information Systems, Inc*., 1992 WL 356119 at *2-3 (D. Md. 1992).

[7] *E.g., Matthews v. Worthen Bank & Trust Co.*, 741 F.2d 217, 219 (8th Cir. 1984) (relying on *Boothe*); *Yeager*, 961 F. Supp. at 162 (relying on *Sizemore*); *Podell v. Citicorp Diners Club, Inc*., 914 F. Supp. 1025, 1036 (S.D.N.Y. 1996) (relying on *Boothe*); *Stich v. BAC Home Loans Servicing, LP*, 2011 WL 1135456 at *4 (D. Colo. 2011) (relying on *Lucchesi*).

> this section does not include the extension of credit to commercial entities.

Staff Summary, 2012 WL 5879749 at *43; *accord id.* at *7.

Finally, even could its exclusion theory be correct in the abstract, the defendant has not shown that it would apply in the circumstances alleged in the amended complaint. "[S]everal courts have held that where the purpose of *a plaintiff's credit application* was to secure credit for business purposes, as opposed to personal, family or household purposes, the reporting agency's conduct was not covered by the Act." *Natale v. TRW, Inc.*, 1999 WL 179678 at *3 (N.D. Cal. 1999) (emphasis added). The amended complaint alleges that the plaintiff did not apply for an extension of credit and, on the contrary, forbade the defendant to pull his credit report. The defendant has not explained how any exclusion from FCRA would extend to reports obtained without the consumer's request for an extension of business credit or business insurance. Permitting such a practice seemingly would open the door to gross abuse, allowing defendants to acquire credit information on any individual with impunity simply by describing their action as in anticipation of some potential, but unrequested, future credit or insurance transaction with the consumer's business.

### C. Willfulness.

The defendant's only argument is that the amended complaint demonstrates the defendant "mistakenly" pulled the plaintiff's credit, a mental state insufficient to support willfulness. (Doc. 10 at 11). The amended complaint does no such thing; instead, it alleges that, when confronted by the plaintiff, Bolton *said* the report was pulled by mistake. (Doc. 26 at 5). A plaintiff does not admit the truth of a defendant's assertion by setting forth the assertion in his pleading,[8] and the defendant offers no authority in support of its unorthodox contrary position.

---

[8] If he did, there could never be a successful misrepresentation claim, since the plaintiff by stating what the defendant said (as required by Rule 9(b)) would admit the truth of the defendant's representation and thereby negate his claim.

In its reply brief, the defendant pivots from its "mistaken" argument to assert that those portions of the amended complaint seemingly indicating willfulness do not really do so. (Doc. 24 at 6-8). "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Clarke v. Tannin, Inc.*, 301 F. Supp. 3d 1150, 1173 (S.D. Ala. 2018). The defendant identifies no reason to stray from this longstanding rule.

In any event, the defendant has not shown that the amended complaint fails to plausibly allege a willful violation. "[R]eckless disregard of a requirement of FCRA would qualify as a willful violation …." *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 71 (2007). A violation of FCRA is reckless if "the company ran a risk of violating the law substantially greater than the risk associated with a reading [of the statute] that was merely careless." *Id.* at 69.

As explained in the amended complaint, when the plaintiff sought rectification of the credit pull, the defendant insisted that the plaintiff's provision of his social security number gave the defendant *carte blanche* to pull his credit even though the identifier was provided for a different purpose, even though the defendant knew the plaintiff was only comparison shopping, even though the plaintiff insisted his credit not be pulled, even though the defendant represented that its policy prevented it from pulling his credit, and even though the defendant assured the plaintiff his credit would not be pulled. (Doc. 26 at 3-4, 6). "A person shall not use or obtain a consumer report for any purpose unless [it] is obtained for a purpose for which the consumer report is authorized to be furnished under this section …." 15 U.S.C. § 1681b(f)(1). As noted by the plaintiff, (Doc. 20 at 14-15), "[d]ecisions that have addressed the issue teach that a permissible purpose … cannot, as a matter of law, be established where the defendant obtained a credit report in response to mere comparison shopping behavior." *Miller v. Dish Network, L.L. C.*, 326 F. Supp. 3d 51, 67 (E.D. Va. 2018) (citing district court cases from Arizona, California, Colorado and New Jersey). *Miller* and the cases cited therein all predate the defendant's conduct in this case, and it is reasonable to infer that a large commercial bank such as the defendant was aware of this line of authority; the defendant makes no argument to the

contrary. Nor does the defendant suggest that the case law is split or that there is room for reasonable disagreement about the legal proposition. The amended complaint's allegations therefore plausibly allege that the defendant recklessly obtained a consumer report without a permissible purpose, in violation of FCRA.

What the defendant does argue is that the plaintiff's cases are irrelevant because "whether Wells Fargo had a permissible purpose is separate and distinct from whether it acted willfully." (Doc. 24 at 7). Actually, no. When the law is adequately established that certain circumstances are incompatible with a permissible purpose for obtaining a consumer report, a defendant that obtains a consumer report under such circumstances not only violates the law but does so recklessly and thus willfully. Because the defendant has not challenged *Miller*'s recapitulation of the law regarding obtaining consumer reports on mere comparison shoppers, for present purposes that law is established sufficiently to support a claim of willfulness.

The defendant's only other argument is that "whether or not Wells Fargo willfully pulled Plaintiff's credit must be established by facts surrounding the actual alleged credit pull, not Wells Fargo's subsequent actions." (Doc. 24 at 6-7). The only "subsequent action" alleged in the amended complaint is the defendant's refusal to rectify the credit pull. The plaintiff does not appear to rely on this conduct to establish willfulness, and it is clear that he need not do so since, as discussed above, the defendant's obtaining of a credit report on a known comparison shopper itself supports a willful violation.

### D. False Pretenses.

As noted, the amended complaint alleges in part that the defendant violated Sections 1681n(b) and 1681q. (Doc. 26 at 8). These provisions read as follows:

> Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater.

15 U.S.C. § 1681n(b).

> Any person who knowingly and willfully obtains information from a
> consumer reporting agency under false pretenses shall be fined under
> Title 18, imprisoned for not more than 2 years, or both.

*Id*. § 1681q.

The defendant argues that the plaintiff has no "false pretenses" cause of action. He has no claim under Section 1681n(b) because relief extends only to CRA's, not to consumers, and he has no claim under Section 1681q because it provides only for criminal sanction, not civil liability. Even if such a civil claim against the defendant nominally exists, it is "subsumed within" the plaintiff's claim based on Section 1681b(f)(1) for obtaining the plaintiff's consumer report without a permissible purpose. (Doc. 10 at 13-15; Doc. 24 at 8-9).

By its explicit language, Section 1681n(b) provides a remedy only in favor of a CRA. The Court therefore agrees that the plaintiff, who is not a CRA, has no cause of action under that provision.[9]

The defendant cites no authority for the proposition that Section 1681q cannot support civil liability. In fact, as discussed below, that provision has long been used to impose civil liability against defendants that wrongfully obtain a consumer report.

Sections 1681n and 1681*o* provide a civil remedy for willful and negligent noncompliance, respectively, "with any requirement imposed under this subchapter with respect to any consumer." 15 U.S.C. §§ 1681n(a), 1681o(a). Prior to its 1996 amendment, FCRA did not expressly require users to avoid requesting consumer reports without a permissible purpose, but courts construed Section 1681q to impose such a requirement, the violation of which would give rise to civil liability under Sections 1681n(a) and/or 1681o(a). *Phillips v. Grendahl*, 312 F.3d 357, 363-64 (8th Cir. 2002),

---

[9] *E.g., Benzing v. Tharrington-Smith, LLP*, 2012 WL 169946 at *6 n.3 (E.D.N.C. 2012); *Miller v. TransUnion LLC*, 2007 WL 641559 at *4 (N.D. Ill. 2007); *Grismore v. United Recovery Systems, L.P.*, 2006 WL 2246359 at *4 (D. Ariz. 2006).

"In the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose," such a defendant "is liable to th[e] consumer" for certain damages. 15 U.S.C. § 1681n(a)(1)(B). The plaintiff does not invoke this provision, and it would not assist him, since the defendant is not a natural person.

*abrogated in part on other grounds*, *Burr*, 551 U.S. at 56 n.8, 71. While Section 1681q does not expressly require users not to request consumer reports without a proper purpose, it does require them to avoid obtaining such reports by false pretenses; since an element of a false pretenses claim is the lack of a permissible purpose, courts reasoned that Section 1681q effectively requires users to avoid requesting consumer reports without a permissible purpose. *Id.*

The 1996 amendments added Section 1681b(f), which expressly provides that "[a] person shall not use or obtain a consumer report for any purpose unless … the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." Because Section 1681b(f) directly imposes a requirement not to obtain a consumer report without a permissible purpose, it is no longer necessary to resort to Section 1681q to assert such a violation of FCRA. *Phillips*, 312 F.3d at 364. Even after 1996, however, Section 1681q remains the only statutory source of a "requirement under this subchapter" not to obtain a consumer report by false pretenses, the violation of which will support civil liability under Sections 1681n(a) and 1681o(a).[10]

At least four Courts of Appeal held prior to 1996 that Section 1681q imposes a requirement not to obtain a consumer report under false pretenses, redressable through Section 1681n(a). *Yohay v. City of Alexandria Employees Credit Union*, 827 F.2d 967, 971-72 (4th Cir. 1987); *Zamora v. Valley Federal Savings & Loan Association*, 811 F.2d 1368, 1370 (10th Cir. 1987); *Kennedy v. Border City Savings & Loan Association*, 747 F.2d 367, 369 (6th Cir. 1984); *Hansen*, 582 F.2d 1219; *accord Northrop v. Hoffman, Inc.*, 134 F.3d 41, 47 (2nd Cir. 1997) (reaching the same conclusion shortly after the 1996 amendments, based on the pre-amendment statutory scheme). The "plain language" of Sections 1681n(a) and 1681q required this result. *Kennedy*, 747 F.2d at 369; *accord*

---

[10] Some courts have questioned how violation of a criminal statute that requires knowing and willful behavior could support civil liability for negligence under Section 1681o(a). *E.g., Duncan v. Handmaker*, 149 F.3d 424, 429 (6th Cir. 1998); *Northrop v. Hoffman, Inc.*, 134 F.3d 41, 47 n.7 (2nd Cir. 1997). The defendant raises no such argument.

*Northrop*, 134 F.3d at 47. Pre-amendment district court decisions from outside these circuits consistently concurred.[11]

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Forest Grove School District v. T.A.*, 557 U.S. 230, 240 (2009) (internal quotes omitted). The 1996 amendment, while it tweaked Sections 1681n(a) and 1681q, made no alteration capable of upsetting the construction given these provisions by the wealth of judicial authority cited above. Section 1681q was amended only to increase the penalties for its violation,[12] while the relevant portion of Section 1681n(a) was amended only to broaden the range of defendants from CRA's and users to "persons."[13] Moreover, the 1996 amendment added Section 1681n(a)(1)(B), which quantified the liability, to a consumer, of a natural person that obtains a consumer report under false pretenses[14] – a measure that would have been meaningless had Congress not understood Section 1681q to impose a requirement the breach of which could support civil liability to begin with.[15]

---

[11] *E.g., Zeller v. Samla*, 758 F. Supp. 775, 778 (D. Mass. 1991); *Boothe v. TRW Credit Data*, 557 F. Supp. 66, 70-71 (S.D.N.Y. 1982); *Shaw v. Shaw*, 1994 WL 16014349 at *4-5 (M.D. Fla. 1994); *Galligan v. Commonwealth Mortgage Assurance Co.*, 1994 WL 263351 at *3 (E.D. Pa. 1994); *Chiappetta v. Tellefson*, 1985 WL 1951 at *1 (N.D. Ill. 1985).

[12] Pub. Law 104-208, § 2415, 110 Stat. 3009 (1996).

[13] *Id.*, § 2412.

[14] *Phillips*, 312 F.3d at 364.

[15] Some courts appear to credit Section 1681n(a)(1)(B) with creating the liability, but this does not honor the statute's language or structure. Subsection (a) identifies the source of liability – the violation of "any requirement imposed under this subchapter" – while sub-subsections (1)-(3) merely establish the amount of the liability imposed by subsection (a) for the violation of requirements imposed elsewhere in the statute. Nor is it easy to believe that Congress intended that only individuals, but not entities, should be liable to consumers for obtaining consumer reports under false pretenses. *See, e.g., Boone v. T-Mobile USA Inc.*, 2018 WL 588927 at *11-13 & *11 n.7 (D.N.J. 2018) (Section 1681n(a)(1)(B) "does not limit a plaintiff's ability to seek 'false pretenses' … actions against corporate entities" under Section 1681q).

Unsurprisingly, then, courts have continued to confirm, since the 1996 amendments, that Section 1681q imposes a requirement to avoid obtaining consumer reports by false pretenses, the violation of which supports a civil claim under Section 1681n(a) and perhaps Section 1681o(a).[16]  The Court concurs with this conclusion.

Given the express requirement imposed by Section 1681b(f) not to use or obtain a consumer report for an impermissible purpose, the Eighth Circuit in *Phillips* described continued reliance on Section 1681q as "anachronistic and unnecessary," 312 F.3d at 364, language on which the defendant seizes.  The *Phillips* Court also called Section 1681q "largely redundant" as a basis for civil liability.  *Id*. at 363.  "Unnecessary" and "redundant," however, do not mean "inapplicable" or "impermissible."  And while resort to Section 1681q may be unnecessary (thanks to Section 1681b(f)) when the claimed violation is obtaining a consumer report without a permissible purpose, as discussed above it remains necessary when the claimed violation is obtaining a consumer report under false pretenses.

The defendant argues that, even if Section 1681q imposes a requirement the breach of which will support civil liability, a claim of obtaining a consumer report under false pretenses is "subsumed within" a claim of obtaining a consumer report without a permissible purpose.  The claims are certainly related, but the Court is unpersuaded that the latter swallows the former.  In describing the measure of recovery for various violations, FCRA refers separately to damages for "obtaining a consumer report under false pretenses *or* knowingly without a permissible purpose."  15 U.S.C. § 1681n(a)(1)(B) (emphasis added); *accord id*. § 1681n(b).  Congress's use of the disjunctive reflects that it understands these to be separately viable claims.  Indeed,

---

[16] *E.g., Kennedy v. Chase Manhattan Bank USA*, 369 F.3d 833, 841 (5th Cir. 2004); *Bakker*, 152 F.3d at 1012; *Okeke-VonBatten v. Greater Washington Mortgage, LLC*, 766 F. Supp. 2d 43, 46 (D.D.C. 2011); *Drake v. Enhanced Recovery Company, LLC*, 2018 WL 1402586 at *6 (D. Ore. 2018); *Randall v. Dish Network, LLC*, 2018 WL 3235543 at *3 (E.D.N.Y. 2018); *Boone*, 2018 WL 588927 at *12-13; *Sheridan v. AFNI, Inc*., 2015 WL 506573 at *2 (M.D. Tenn. 2015); *Banga v. First USA*, 2013 WL 12324701 at *2 (N.D. Cal. 2013); *Gelman v. State Farm Mutual Automobile Insurance Co*., 2007 WL 2306578 at *4 (E.D. Pa. 2007); *Miller*, 2007 WL 641559 at *4; *Stonehart v. Rosenthal*, 2001 WL 910771 at *5 (S.D.N.Y. 2001).

reading FCRA to make obtaining a consumer report under false pretenses (addressed in Section 1681q) subsumed within obtaining a consumer report without a permissible purpose (addressed in Section 1681b(f)) would appear to violate the principle that a court "must, if possible, construe a statute to give every word some operative effect." *Cooper Industries, Inc. v. Aviail Services, Inc.*, 543 U.S. 157, 167 (2004).[17]

The Court agrees with the many decisions recognizing that an element of a false pretenses claim is the absence of a permissible purpose.[18] The Court therefore agrees with those decisions ruling that the existence of a permissible purpose (or the plaintiff's failure to allege or prove its absence) is equally fatal to both a permissible purpose claim and a false pretenses claim.[19] But the Court does not agree with the defendant's implicit premise that the converse is also true: that the establishment of a permissible purpose claim, of itself, automatically establishes a false pretenses claim as well.

A permissible purpose claim consists of the following elements: "(i) that there was a consumer report, (ii) that defendants used or obtained it, (iii) that they did so without a permissible statutory purpose, and (iv) that they acted with the specified culpable mental state." *Shepherd-Salgado v. Tyndall Federal Credit Union*, 2011 WL 5401993 at *3 (S.D. Ala. 2011). The Eleventh Circuit has not addressed the elements of a false pretenses claim, but other courts have regularly required, in addition to the foregoing, that the user either have failed to disclose to the CRA its impermissible

---

[17] Because Section 1681q provides for criminal liability, it would retain meaning even if the provision were read to limit civil liability to the parameters of liability for obtaining a consumer report without a permissible purpose. The civil component of the provision, however, would be drained of any effect.

[18] *E.g., Kennedy*, 369 F.3d at 842; *Duncan*, 149 F.3d at 426.

[19] *E.g., Kennedy*, 369 F.3d at 842; *Scott v. Real Estate Finance Group*, 183 F.3d 97, 99-100 (2nd Cir. 1999); *Tatro v. Equifax Information Services, LLC*, 2019 WL 3253785 at *2 (D.R.I. 2019); *Valle v. RJM Acquisitions, LLC*, 2015 WL 739855 at *2 (D. Conn. 2015); *Kertesz v. TD Auto Finance LLC*, 2014 WL 1238549 at *3 (N.D. Ohio 2014); *Daniel v. DTE Energy*, 2013 WL 4502151 at *4 (E.D. Mich. 2013); *Landaker v. Bishop, White, Marhall & Weibel, P.S.*, 2012 WL 6025741 at *6 (W.D. Wash. 2012).

purpose[20] or have affirmatively and falsely identified to the CRA a permissible purpose.[21] Because it has elements beyond those necessary to establish a permissible purpose claim, a false pretenses claim cannot be subsumed within a permissible purpose claim.

Nor does establishment of a permissible purpose claim dictate that the additional elements of a false pretenses claim will always be established. Most obviously, if the user informs the CRA that he seeks the information for an impermissible purpose but the CRA nevertheless provides the user a consumer report, the report cannot have been obtained by false pretenses even though it was obtained without a permissible purpose. *Allen v. Calvo*, 832 F. Supp. 301, 303-04 (D. Ore. 1993).

The gap between a false pretenses claim and a permissible purpose claim is even broader if, as some courts plausibly maintain, a false pretenses claim requires a mental state more culpable than negligence.[22] A permissible purpose claim can be based on negligence under Section 1681o(a);[23] if a false pretenses claim cannot be so based, establishment of a permissible purpose claim under Section 1681(o) will fail to establish the mental state necessary for a false pretenses claim.

The only authority cited by the defendants is the Court's decision in *Shepherd-Salgado*, which stated that the plaintiff's false pretenses claim "simply collapses into the 'permissible purpose' claim for purposes of a FCRA analysis." 2011 WL 5401993 at *3 n.4. The *Shepherd-Salgado* plaintiff's false pretenses claim was indeed controlled by the permissible purpose analysis: the existence of a permissible purpose (which the amended complaint disclosed) defeated both claims. *Id*. at *7. To the extent *Shepherd-Salgado*

---

[20] *E.g., Duncan*, 149 F.3d at 426; *Hansen*, 582 F.2d at 1219-20.

[21] *E.g., Zamora*, 811 F.2d at 1370; *Maloney v. City of Chicago*, 678 F. Supp. 703, 707 (N.D. Ill. 1987).

[22] *See* note 10, *supra*.

[23] *E.g., Phillips*, 312 F.3d at 365; *Capetta v. GC Services Limited Partnership*, 654 F. Supp. 2d 453, 460-61 (E.D. Va. 2009); *Daniels v. Goodyear Tire/Cbsd*, 2017 WL 9472892 at *4 (E.D. Mich. 2017).

can be read for the proposition that a false pretenses claim *always* collapses into a permissible purpose claim, such that a false pretenses claim has no independent vitality, it is *dicta* from which the Court now retreats.[24]

To resolve the instant motion, it is unnecessary for the Court, unassisted by the parties, to delineate the precise contours of a false pretenses claim. Nor is it necessary to determine what, if any, additional benefit a plaintiff may derive from pursuing a false pretenses claim along with an impermissible purpose claim. It is sufficient for present purposes to reject the defendant's argument that a false pretenses claim is automatically "subsumed within" a permissible purpose claim, and the Court does so.[25]

---

[24] Two of the three cases cited in *Shepherd-Salgado* stand only for the unremarkable propositions that a court looks at permissible purposes in evaluating a false pretenses claim and that the existence of a permissible purpose defeats a false pretenses claim. The third states (in *dicta*, since there was no false pretenses claim presented and since there was a permissible purpose) that, "if no such 'permissible purpose' exists, the person requesting the information is deemed to have obtained the information under false pretenses." *Edge v. Professional Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 117 (E.D.N.Y. 1999).

The *Edge* Court did not explain the rationale behind its pronouncement, but it cited a previous decision offering (in *dicta*, since there was a permissible purpose) this reasoning: because FCRA permits a CRA to release a consumer report only to a user the CRA knows or expects will use the report for a permissible purpose, a user without a permissible purpose must necessarily use false pretenses to gain a report, "assuming the credit reporting agency is complying with the statute." *Advanced Conservation Systems Inc. v. Long Island Lighting Co.*, 934 F. Supp. 53, 54 (E.D.N.Y. 1996). The *Advanced* Court, in turn, relied on *Hansen*, which employed an equivalent qualifier: a user cannot obtain a consumer report for an impermissible purpose without using a false pretense, "[i]f the [CRA] is complying with the statute." 582 F.2d at 1219. By the express terms of these statements, a false pretenses claim cannot necessarily be established by proving a permissible purpose claim, because the stated rule presupposes that the CRA is following the law – something that, as in *Allen*, may not occur.

[25] The defendant insists the plaintiff "abandoned" his false pretenses claim by failing to address it in his responsive brief. (Doc. 24 at 9). The plaintiff, however, did in fact address this claim. (Doc. 20 at 16-17). In any event, the Court has held that, "until the Eleventh Circuit (or Supreme Court) speaks more clearly to the issue or a sister Court (or litigant) provides a more compelling rationale, the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss." *Gailes v. Marengo County Sheriff's Department*, 916 F. Supp. 2d 1238, 1243 (S.D. Ala. 2013). The defendant, which does not acknowledge *Gailes*, has not identified any controlling precedent superseding this ruling or articulated a compelling (or any) rationale for reconsidering it.

## II. Fraud.

In opposition to the fraud claim, the defendant argues the amended complaint: (1) fails adequately to allege promissory fraud; and (2) fails to satisfy Rule 9(b). (Doc. 10 at 15-19).

### A. Promissory Fraud.

"If fraud is based upon a promise to perform or abstain from performing in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive." *Deng v. Scroggins*, 169 So. 3d 1015, 1024 (Ala. 2014) (internal quotes omitted). The plaintiff does not disagree with this statement of the law; nor does he disagree that the amended complaint fails to allege these elements. Instead, the plaintiff says that his claim is for misrepresentation of an existing fact, such that he is not required to allege the additional elements of a promissory fraud claim. (Doc. 20 at 17-18).

The original complaint alleged in paragraph 6 that Bolton assured the plaintiff: (1) that the defendant could get him estimated loan terms without a credit pull if he provided his tax returns and other basic information; (2) that a credit report would be required only if the plaintiff decided to apply for a loan; and (3) that no credit report would be pulled until the plaintiff signed a written authorization. The plaintiff relied on this explanation. (Doc. 1 at 3-4). Count Two of the original complaint, after incorporating these allegations, identified the actionable representations as that the defendant would provide estimated loan terms without a credit pull and would pull his credit only upon his express written authorization. (*Id*. at 7). It is quite plain from these allegations that the original complaint asserted a claim for promissory fraud and only for promissory fraud. The question is whether the amended complaint asserts, alone or in tandem with a promissory fraud claim, a claim for misrepresentation of an existing fact.

The amended complaint alters paragraph 6 by alleging that Bolton assured the plaintiff that, "under Wells Fargo's policy and procedures," the defendant would not pull

the plaintiff's credit unless he applied for a loan and signed a written authorization and by alleging that the plaintiff relied "on that representation as to Wells Fargo's procedures." (Doc. 26 at 3; *id*. at 5). Count Two incorporates these allegations. (*Id*. at 9).

The amended complaint thus alleges that Bolton misrepresented the substance of the defendant's then-existing policies regarding credit pulls and that the plaintiff relied on Bolton's description of those policies. The defendant objects that the plaintiff cites no case reflecting that a mischaracterization of a defendant's policies constitutes a misrepresentation of an existing fact, (Doc. 24 at 12-13), but this argument places the shoe on the wrong foot; the Court is resolving the defendant's motion to dismiss, which means it is the defendant's burden to show that the mischaracterization of policies is *not* a misrepresentation of an existing fact. The defendant also objects that what the plaintiff really relied on was Bolton's assurance that the defendant would follow its policies, (*id*. at 11-12), but the plaintiff alleges he relied on Bolton's description of the policies, and on motion to dismiss that allegation controls.[26]

To the doubtful extent a parallel claim for promissory fraud can be teased out of the language of the amended complaint, it is due to be dismissed for failure adequately to allege the two additional elements applicable to such claims. Because the plaintiff denies any intention to plead a promissory fraud claim, dismissal of any such claim will be without leave to amend.

### B. Particularity.

Fraud must be pleaded with particularity, Fed. R. Civ. P. 9(b), including a statement of "what the defendant obtained as a consequence of the fraud." *In re: Galectin Therapeutics, Inc. Securities Litigation*, 843 F.3d 1257, 1269 (11th Cir. 2016). The defendant posits that the amended complaint includes no such allegation. (Doc. 10 at 18). On the contrary, the amended complaint alleges that, as a result of its fraudulent

---

[26] The very purpose of a policy is to govern future behavior, and it would seem unremarkable for a person informed of a policy's contents to conclude both that the policy is as stated and that the policy will be followed.

representation of its policies, the defendant obtained the plaintiff's tax returns, estimated credit score, and information regarding his property and rental income, none of which the plaintiff would have provided absent the misrepresentation. (Doc. 26 at 3-4). Without this information, the defendant could not have pursued the plaintiff for a business loan, (*id*. at 3), and from this information (specifically, the social security number revealed in the plaintiff's tax returns) the defendant obtained the plaintiff's credit report and presented him a signature-ready loan package. (*Id*. at 5, 6).

The defendant assumes that "what the defendant obtained" must be something of readily quantifiable monetary value – in this case, a consummated loan to the plaintiff or his business. (Doc. 24 at 14). The single trial court decision on which the defendant relies does not support any such proposition, and the Eleventh Circuit has indicated that the acquisition of information not otherwise accessible to the defendant can constitute the thing obtained for purposes of Rule 9(b). *See Mobley v. Fermont-Langlais*, 705 Fed. Appx. 788, 793 (11th Cir. 2017) (information obtained by the defendant would not suffice as the thing obtained where the information was publicly available).

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is **granted** to the extent it seeks dismissal of any claim of promissory fraud and any claim based on Section 1681n(b); all such claims are **dismissed**. The motion to dismiss is in all other respects **denied**.

DONE and ORDERED this 12th day of November, 2019.


s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE